Mr. Thomas. Now, this case and the next one, 16-24-30, are almost completely overlapping in the issues, and we'd ask the parties to try to avoid repetition in the two arguments. Indeed, Your Honor. We will attempt to avoid all repetition on the common issues in the two cases. Sure. Let me ask you a question. Other than the practicing the prior art defense issue, is there any reason that resolution in this case wouldn't resolve content guard v. Google? Well, that's the practicing the prior art defense issue, Your Honor, is for the Google appeal. There's a separate evidentiary issue for the Apple appeal, Your Honor. And that is whether or not they're... This is Apple, isn't it? Yeah, it is. Yeah. So my question was, other than the practicing the prior... Oh, I'm sorry. I misunderstood, Your Honor. Other than, yes, the answer to your question is... You were right, is the answer to your question, Your Honor. May it please the Court, Dirk Thomas on behalf of content guard. Content guard, as we've noticed, has focused its appeal on this case on two very specific issues, one that overlaps, one that doesn't. The overlapping issue is with respect to a claim construction usage rights. Now, we focused our appeal here because the errors that occurred in these two issues permeated the entire trial, particularly usage rights, because it was common. And what happened there is the district court construed these usage rights. Again, this is a digital rights management system that is used so that when somebody wants to rent a movie from iTunes, in the case of Apple, they get the movie along with a certain right to watch it, to play it. You're arguing about the district court's claim construction on usage rights, but you haven't proposed an alternative construction that includes association or its variance either to the district court or to this court. We did not, Your Honor, and for a very, very specific reason and a very solid reason. One, the claims don't require it. What the claims do require, the claims that were asserted, is that once the movie You said that attached and associated were the same thing. So how is it prejudicial that the district court limited you to attached? Really good question, Your Honor, and here's why it's prejudicial. Because the district court didn't stop at saying, first of all, it didn't say associated and attached were the same thing. No, you said it. We said that. And the parties seemed to agree. I'm sorry, Your Honor? The parties seemed to agree that attached to and associated with mean the same thing. I'm looking at the blue brief and the red brief. Well, respectfully, Your Honor, they stood up in front of the jury and told the jury that if it was only associated, it wasn't attached. So if it was the same thing. In the red brief, they say attached or treated as attached is a kind of association. And then in the presentation of their evidence, Your Honor, they told the jury that if it was associated, that was different than attached. Did you object to that? Absolutely, Your Honor. Yeah, that was at the claim construction issue, Your Honor. And when they argued to the jury, did you object to the jury argument? We had earlier, Your Honor, yes. No, the answer is you didn't object when they presented this argument to the jury. When they presented the argument that the attachment was different than associated, Your Honor? Is that what you're asking me? The thing that you're referring to. You say in arguing to the jury, they said associated is not the same as attached. No, respectfully, Your Honor, we had. And that occurred during the Daubert issue because it was resolved. No, no, no, no, no. You've got to object when there is an improper argument to the jury. You've got to object at the time. Did you object at the time? During the trial, no, but that was part of the claim construction, Your Honor, and we had argued that and the district court had ruled in the Daubert ruling when it was entitled to amend or change its claim construction, it did so. And what it did over our objection was to say that our expert was not allowed to say that the reference ID that connects the content to the usage rights associated those two things. The court precluded our expert from saying there was a reference or an association. How does that excuse you from making an objection during the jury argument if you think the other side has gone beyond where it should? No, no, no. I'm sorry, Your Honor, I'm not being clear. My point is that there's not the same scope. It can't be the same scope between attached and associated if they stand up in front of the jury and say one is different than the other. I didn't object to that. I didn't. I think it's true. I think associated is different than attached or treated as attached. I think it's broader, and that's what we tried to present during our claim construction brief. So the issue, Your Honor, is not whether or not they could say that their device, that their usage rights… You said it was the same. You told the district court it was the same, and if they started to argue that it was not the same and you thought that was prejudicial, you should have objected to that. But, Your Honor, the district court told us it wasn't the same, and so that decision had already been made. The district court had told us that our experts or attorneys were not allowed to argue that an association between the usage rights and the content was enough to meet the attached or treated as attached. He precluded our expert from saying the word associated. So, of course, at that point, what they were able to do by default is to tell the jury and get our expert to have to admit in his examination that association wasn't enough. I wasn't allowed to stand up and say otherwise. In his Daubert ruling, the court precluded and restricted us from saying that associated was enough. And so the issue had been resolved at that point, Your Honor. We believe incorrectly. But the issue was whether or not our expert could say that an ID number that was common between the usage rights, the license, and the content was sufficient to mean a reference between the two, that a reference ID was sufficient to be attached or treated as attached. So what are you arguing now? Are you arguing that attached and associated are the same? What we're arguing, Your Honor, is that within the context of Dr. Stefik's patents, he used the word attached metaphorically. The first time he uses it, he puts it in quotes. We all know that you cannot attach a digital bit in memory to another digital bit in memory. And we're talking about digital files here. So what we're saying is that the common and ordinary meaning of attached, some sort of tying or binding of something together, cannot be the appropriate connotation that was intended in the scope of this patent. The attached usage... Let me ask you this. Metaphor, I'm sorry. Let me ask you this. The glossary section of the 859 patent defines usage rights as language for defining the manner in which a digital work may be used or distributed as well as any conditions on which use or distribution is premised.  It ran into a recipient of digital work and goes on. Why don't those definitions amount to lexicography? They do. Okay. Then why should attachment or association be included in our construction if it doesn't appear in definitions of usage? They should not. They should not. And that's what we told the court during the Markman phase, Your Honor. We said that there was no need to define a relationship between the usage rights and the content because none was required in the claims. Or if the claims did say anything about that, they used the word association. They certainly didn't use the word attachment. What the claims... Wait. I didn't understand you on appeal to be arguing that the district court erred in requiring attachment. Am I mistaken about that? Yes, you're mistaken, Your Honor. We believe we objected to any kind of description in the Markman phase, Your Honor. In our Markman brief, we said that there was, and this is in the order, the Markman order that's attached where the court recites what each party's positions are. We said there was no reason to define a relationship between the usage rights and the content absent some association or some connection already being included in the words of that claim. The glossary definition certainly does not require any particular connection or attachment. If attachment and association mean the same thing and you were permitted to present evidence on that limitation, how can this issue be dispositive infringement? We were precluded from presenting evidence. They mean the same thing. We were precluded from saying that, Your Honor. No, you're saying they mean the same thing. And you were permitted to present evidence of one of those. We were precluded from saying that an association between the usage rights and the content was sufficient to meet the attached or treat it as attached claim construction. Where do you object to the district court's usage of the term attached? That was in the Markman phase, Your Honor. That doesn't do it. Where in your brief do you object? Do you raise the argument that the district court should not have used the word attached? When we challenge what? No, now. In this court, in this brief. In this brief, when we said that the court improperly construed usage rights to require an attached or treat it as attached relationship. Where do you say that? I'm just asking you. Maybe my memory is wrong. I'd like to see where you said that it's earned by using the word attached. I believe we said that the district court earned by requiring any relationship other than what the claim to require. And by definition. Just show me where. Okay, Your Honor. Page five, Your Honor. At the bottom. This overly narrow construction. And right above that. We say the parties vigorously disputed the meaning of usage rights at the claim construction stage. Yeah, but that's not the same thing as saying he earned by using the word attachment. What you're saying is that he should have more broadly construed it to use the word associated. No, we said he didn't need to use any word that wasn't already in the claim, Your Honor. We said there was. Where do you argue that here? Where do you argue that his use of the word attachment was an error? Maybe I'm not mishearing, Your Honor. It says right here, the district court rejected defendant's permanent attachment limitation. And it also rejected contact guard's argument and instead held that usage rights must be attached or treated as attached to content. This overly narrow construction was error. Yeah, but that's not the same thing as saying that he was wrong in using the word attachment. What you're arguing, as I understand it, is that he should have included associated in the claim construction. What we argued at the Markman phase. I don't care what you argued at the Markman phase for the moment. I'm talking about what you're arguing in the blue brief. I don't see in the blue brief that you say that the use of the word attachment by the district court was wrong. What you're saying is that it should have been a more expansive definition that mentioned associated as well. Or it should have been no particular relationship that was necessary. The usage rights, Your Honor, don't necessarily have to have any particular connection to the content. It's just that Judge Wallach noted the glossary definition of usage rights does not define any relationship. I have a few questions for you I want to clear up. In regards to the JMO, at 47 you argue in the blue brief, you argue that Apple's repeated and unambiguous concessions that a reasonable jury was not in fact required to find for Apple compelled the conclusion of the new trial as appropriate. That's the very standard required for judgments as a matter of law. A motion for, I'm quoting from Old Town Canoe, a motion for JMOL is probably granted only if no reasonable juror could find in the non-movement's favor. Did you honestly expect us to fault Apple for presenting its arguments under the correct legal standard? No, Your Honor, what we were presenting in that argument was the fact that Apple recognized there was a disputed factual issue with evidence on both sides. No, they did not. Well, Your Honor, they argued that there was a reasonable They said a reasonable juror could find in our favor. Well, they said they were resolving factual disputes, Your Honor. Respectfully, that's what we believe that they were saying. In the yellow brief, at 38, you say, Apple argues that Apple's gamesmanship could not have affected content guard substantial rights. I couldn't find where Apple referred to its arguments as gamesmanship. Where was that? Apple's gamesmanship, Your Honor? With respect to how it was alternatively arguing, that's what we meant. I don't think we were saying gamesmanship was the word that Apple used. Second, Apple argues that Apple's gamesmanship could not have affected content guard's substantial rights. You're saying they argued that their gamesmanship did something. Where did they argue gamesmanship? We think that their presentation of an argument that there was a material factual dispute that could have gone either way, on which the jury could have resolved the issue either way, means that there was not a necessary directed verdict. Their Rule 50B motion on this had been denied by the district court. So by gamesmanship, you mean like following the rules? Well, certainly we weren't trying to say that, Your Honor. That's not what we were trying to get to. What we were trying to get to is we thought it was inconsistent for Apple to say to the district court, the jury had evidence that could have gone both ways, and then to come here and say the evidence could only go one way. That's what we thought was inconsistent, Your Honor. And that's what we were trying to urge. Have I responded to that question, Your Honor? Oh, yeah, you've responded well. Judge Dyke, I think I want to get back to your question about where we said... We're out of time here, and I think we'll give you your rebuttal time and you can address whatever you want at that point. Very good, Your Honor. Mr. Trello. Thank you, Your Honor. May it please the Court. Let me start with usage rights, and in particular, Judge Wallach, I'd like to talk about your question about, you know, it's not in the glossary definition of usage rights, so why is attachment in there? This Court's decisions on claim construction recognize a number of ways that a patentee can define a term or impose a restriction. There's express definition. There's implicit definition by using a term consistently throughout the spec. There's referring to things as a component of the present invention, statements to the patent office, and even occasionally extrinsic statements by the inventor. We've got every single one of those here. They're not even arguing that the use of the word attachment is incorrect, are they? Well, I don't, frankly, Your Honor, I don't know, and I don't even know now whether they think associated and attachment mean the same thing. I thought I heard both things up here. I understand the argument in the brief to be that it was okay to use the word attachment, but that they should, the district court should have included associated within the claim construction, even though the two terms in their view mean the same thing. Well, if that's the argument, Your Honor, and I confess the same kind of confusion that I think you're expressing, they never asked the district court to include associated, and I think Mr. Thomas just admitted that. They never asked that that be included. That was my point. I don't think that Judge Dykes is expressing any confusion. He's articulating their argument such as it is. Well, if that's their argument, then I think it was waived at the district court because they never asked for associated to be included. And so I think it's clear from the specification that usage rights are to be attached to the content. And, Judge Wallach, you're correct that the glossary definition of usage rights doesn't include attached, but it's also correct that the district court didn't use that glossary definition at all. We argued that they should use the language for expressing and all of that, and he didn't. The glossary definition of digital work, however, does say that usage rights are attached to digital work. The glossary definition of composite digital work says that composite digital work can be different parts, each of which has usage rights attached. So whether it's appended to the usage rights construction or somewhere else, and incidentally we requested a construction of digital works that included attached or treated as attached, the judge, Judge Dilstrap, concluded that that didn't need to be construed after, pardon me, after he had, you know, came up with his usage rights construction. So it's in, there's no question that it is a component of this invention as claimed. Whether you attach it to, whether you, I shouldn't say attach it, append it to the digital works construction or usage rights, it's there, it's crystal clear in the specification. Now on this association point, besides the fact that they never asked for that to be part of the construction, there are a couple of things that I think are clear. One is that everybody agreed throughout that usage rights should be construed the same way for all of the claims, whether it was the two claims that happened to use the word associated or the three other claims. The second, and I think this was clear in the brief at least, is ContentGuard takes the position that associated and attached or treated as attached mean the same thing in the context of these claims. So usage rights that are attached or treated as attached are usage rights that are associated as the term is used in the patent claims. And that's, of course, the only meaning that matters. Now the issue with respect to not letting, and it wasn't just ContentGuard's experts who were precluded, nobody's experts were supposed to be throwing around the term associated. That arose at the Dalbert stage because Judge Gilstrap was concerned that people might be trying to use language other than his claim construction to convey some broader meaning to the jury. After all, associated, it's a general word. It's not a technical term. Outside the context of these patents, it can have a range of meanings. Pardon me. And so that's what he was trying to deal with. Now, I think it's pretty clear in this Court's case is once a court has construed a claim, it's perfectly entitled and, in fact, probably required to hold the parties to that construction and not allow them to be throwing around other unconstrued terms to try to, whether they're trying to or not, that might confuse or mislead the jury. And it's important to note that Judge Gilstrap was even-handed about this. The next paragraph of his order on the Dalbert motions, he had the paragraph about associated. The next one says, no expert can say anything to suggest that usage rights have to be permanently attached to content, which was, of course, a construction that we wanted. So what he was doing was holding the parties to the claims as he had construed them, which is what district judges do after they've construed the claims. Now, the reason this came up at trial is that notwithstanding the Dalbert ruling, Content Guard's expert on direct examination, Content Guard counsel asked his expert, Dr. Goodrich, about supposed usage rights associated with a movie in the Apple system. It was the Avengers movie that they were using as an example. So on cross, Apple's counsel got up and reminded Dr. Goodrich about the claim construction, and Dr. Goodrich agreed, and these were his words, a mere association is not sufficient. And that's right, using association in the broad sense. Now, the cross-examination was completely appropriate. It was consistent with the claim construction, and there was no objection to the cross-examination at trial. Even after that, the very next day, Content Guard put its expert on the 053 patent on the stand, Dr. Martin, and he several times was throwing around the term associated with usage rights. So that basically left Apple with no choice but, in closing, to address the associated issue. And basically, there was one reference to it. It's at appendix page 2678. To read their brief, you'd think that the whole closing was about that, and it's far from true, and there was no objection to that argument. And contrary to their assertion that somehow this ruling precluded them from introducing evidence, it didn't do anything of the kind. Their expert was still permitted to, you know, talk about every feature of the accused devices that he said established the necessary connection between usage rights and the content. He wasn't allowed to use the word associated. Exactly. He wasn't allowed to characterize it. That's a restriction, right? Well, it's a restriction, but it's not a restriction. I don't think it's a restriction on evidence. It's a restriction on characterizing the evidence. He was allowed to talk about ID numbers, memory addresses, every feature of the accused products that he said provided the necessary link between usage rights and content. All he was precluded from doing was saying that that was that it was association rather than attached or treated as attached. And he said it was attached or treated as attached. So if you combine that with the fact that they're saying that they mean the same thing in the context of these claims, it's hard to see what the argument is about in truth. So the, you know, in light of the claim construction and the Court's rulings, the only purpose that could have been served by allowing the experts to use the term associated would have been to confuse or mislead the jury to suggest that something other than the attached or treated as attached construction was what mattered. And Judge Gilstrap properly precluded that. The, now there, apart from the claim, the usage rights claim construction, they fail, even if that, even if attached or treated as attached shouldn't be there and we think it should, obviously, they fail to prove infringement for other reasons. They fail to prove that Apple has their repository limitations. Now, we lay that out in our brief and the fundamental point is the communications integrity requirement requires that, to have communications integrity and, therefore, be a repository as defined, everything you communicate with in connection with usage rights has to be a repository as well. It's undisputed, for example, that the Akamai servers that deliver the content, so they clearly are involved with the content, their expert admitted that they're not repositories, so that alone just, and that has nothing to do with usage rights being attached or treated as attached. Now, one thing I do want to talk about and Mr. Thomas didn't get into it expressly and that's this one discovery or evidentiary dispute about the R-Sync code. Now, you know, and I have to say for a party that claims to be astonished at unconscionable behavior by its adversary, Content Guard makes some pretty astonishing statements in that argument. Did they ever get the code? Yes, well, it's publicly available code and, importantly, Your Honor... I want to know how you feigned confusion. I had that to ask, too, but I ran out of time. Oh, well, perhaps I'll have to rebuttal. I'm sorry, Your Honor. Your Honor, they were permitted in response to their R-Sync objection to put in their, over our objection, to put in undisclosed expert testimony about how the fact that we used R-Sync in some way established behavioral integrity, which was what all this was about. So they got to put in that case. They had the code. The code is publicly available. I believe they had it. Their expert certainly testified as if he had it. Now... Well, that confuses me because I thought that the contention was here that Apple didn't produce the code, and that, in fact, there was a sanction directed to Apple because it didn't produce the code. What am I failing to understand here? No, the... Well, actually, there... I think what perhaps... There are two issues. The argument about producing code had to do with the source code issue. Here, the argument was not that they didn't have the code. The argument was that we supposedly concealed the fact that this R-Sync utility was involved at all in the software update process. Now, there are a couple of things about their argument that I do want to point out. First of all, they say in their reply at page 37 that we argue that there was no evidence that certificates... This is the digital certificates... are involved in server software side updates. We argued nothing of the kind, and we wouldn't have because it doesn't make any difference whether certificates are involved. And then at page 40, they say the claim construction does not require that the digital certificate be included in the software. That is unfathomable. The construction of behavioral integrity is, quote, requiring software to include a digital certificate in order to be installed in a repository. And, I mean, the reason that they want to get away from that is because R-Sync has nothing to do with whether digital certificates are included in software. R-Sync establishes a communications channel between two servers. It doesn't... It has nothing to do with the software that's transferred over. It's standard Linux, isn't it? Yes, exactly. It's a Unix system thing, yes. And I do want to... I want to come back because I'm still confused about this. As I understand it, Apple was sanctioned for not turning over the source code. Am I wrong about that? I think you're... I hesitate to say wrong. I think there's a little bit of confusion. There was an argument about source code. And this order is at appendix page 575, Judge Gilstrap's order. This is not an R-Sync issue. This had to do with actually something called correlation information. Apple produced 180 million lines of source code, all the source code it was supposed to produce. Content Guard complained that we can't figure this out. So Apple did two things. One is it generated and produced correlation information that essentially says, okay, this piece of the source code relates to this update for this device so that they could help, they could sort through it. Apple also in November of 2014 offered to make an expert available. I'm sorry, an engineer available. Well, what was Apple sanctioned for?  What page is that on? The order is at appendix 575. That's where it begins. The Judge Gilstrap concluded that Apple had agreed to produce correlation information and hadn't produced all of it in the proper form early enough in the discovery period. And for that reason, he granted their motion, he granted all the relief they requested, which was that Apple's expert, Dr. Kelly... Was the correlation information ultimately produced? Yes, it was. And what Dr. Kelly... Dr. Kelly... The motion was to strike certain paragraphs from his report and preclude him from testifying about that subject matter. That was done. He didn't testify about that subject matter. Then they tried to raise the issue at trial and Judge Gilstrap said, well, you asked me for relief. I gave you relief. Nothing's changed. And so he denied that request. What additional relief did they request at the trial? It's not even clear to me what additional relief they were requesting. I think they were trying to preclude other witnesses, fact witnesses, from testifying about how the Apple system works because that somehow, in their mind, at least overlapped with what Dr. Kelly had been precluded from testifying about. But Judge Gilstrap basically said, well, you didn't ask me for that. I gave you what you wanted and so, you know, basically go away. We're done with this issue. Now, I do want to return just very, very briefly... What about the JMO? Well, Your Honor, I was sort of baffled by that argument because, first of all, I don't think even in any of the quotes that they produced that we said there was a factual dispute requiring resolution. We said a reasonable jury could find for us, which is the standard. And so to suggest that that's somehow a waiver or an agreement that the reasonable jury could find for them is kind of baffling. The last thing I want to say very quickly, on the Arsync issue, they claim that our, Alan Ward, our engineer, somehow lied about Arsync being involved in these software updates. I think it's important when you look at their brief, several places in both the opening brief and the reply brief, they quote his testimony saying these updates were installed locally, which they put in quotes, which he said, but then they say I.E. by hand, which he most assuredly did not say. And that's this, they have this notion that local installation means manually, basically an engineer is sitting at each machine putting a disk in or something. He never said that. Everybody knows that's not how it happens. So their suggestion that he somehow perjured himself is just offensive. Okay. Mr. Trello, we're out of time. Thank you, Your Honor. He used up all his time. We'll give you two minutes. Thank you, Your Honor. I would point to the Court's attention to appendix page 3205. Two minutes. Two minutes. 3205, because we did ask at that point, that was part of the claim construction briefing, where we said that an interpretation that requires anything more than a reference in the usage rights file and association to the content is incorrect. Where do you say that in the blue brief? We say it on page 15 of our brief, Your Honor. That was in our, I'm sorry, it was not in our blue brief. It was in our reply brief. Where do you say it in the blue brief? Where do you say in the blue brief that he shouldn't use the word attached? That we shouldn't use the word attached. Right. We said that in the blue brief, Your Honor. Where do you say in the blue brief that he shouldn't have used the word attached? Page 52, Your Honor. For all the reasons the Court should construe usage rights as indications that are associated with and that indicate a manner in which the document may be used or distributed, as well as any conditions on which use or distribution is premised. What we're saying is that we don't... That's your argument. Well, Your Honor, I believe we said throughout that attachment was not a requirement of the usage rights claim term. That's what we said, Your Honor. We said that the... You can say all sorts of things throughout the proceeding below, but to bring it to this Court, you've got to put it in your blue brief. And you've got to put it in your blue brief in a way that it's really argued, not mentioned in passage. I mean, and you're familiar with our authority that says a mere general statement is insufficient, aren't you? Indeed, Your Honor, but I'm sure that we said in the blue brief that when the Court required there be an attached or treated-as-attached relationship between the usage rights and the content, that was error. And we pointed out that... Well, you're sure that you said that, but other than this passing reference in the conclusion, you can't point to any place where you did. Well, honestly, Your Honor, I'd have to... I'm sure... I would like the opportunity to point that out to you. Well, you have the opportunity right now. Now, come on. You know, I don't have it memorized, Your Honor, with respect to... But you should. I expect, Counsel, when I appeared in front of circuit courts, I expected, if a court asked me, to be able to say it's on the top of page 7 of the appellant's opening brief, Your Honor. All right, we're out of time. We'll go on to the next case. Our next case is number 1620.